# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CROSSROADS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> (1) 3PAR, INC., <br> (2) AMERICAN MEGATRENDS, INC., <br> (3) RORKE DATA, INC., <br> (4) D-LINK SYSTEMS, INC., <br> (5) CHELSIO COMMUNICATIONS, INC. <br>   (a Delaware corporation) <br> (6) ISTOR NETWORKS, INC., and <br> (7) CHELSIO COMMUNICATIONS, INC. <br>   (a California corporation) <br><br>   Defendants. | CIVIL ACTION NO. 1:10-CV-00652-SS <br><br> JURY TRIAL DEMANDED |

**RORKE'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE SPECIAL**

**MASTER REGARDING U.S. PATENT NOS. 7,O51,147 AND 6,425,035B2**

I.      INTRODUCTION

Defendant Rorke Data, Inc. ("Rorke") submits this limited objection to the Report and Recommendation of the Special Master ("Recommendation") concerning the Special Master's proposed construction of two terms from the claims of U.S. Pat. Nos. 6,425,035 ("the '035 patent") and U.S. Pat. 7,051,147 ("the '147 patent") presently asserted by Plaintiff Crossroads Systems, Inc. ("Crossroads").  Rorke incorporates by reference the claim charts the defendants jointly submitted in conjunction with its briefing to the special master.[1]

As an initial matter, Rorke does not object to the vast majority of the Special Master's claim construction recommendations.  Rather, this objection is narrowly tailored to only two of the subject terms.  Specifically, Rorke objects to the Special Master's proposed construction of the terms "access control(s)" and "device" from the asserted claims.  Because Rorke believes the Special Master's recommended construction for these terms reflects clear error, Rorke objects to those constructions and requests the Court instead revise the proposed constructions according to controlling law and the intrinsic and extrinsic evidence previously presented to the Special Master.

II.     BACKGROUND OF THE TECHNOLOGY

The patents-in-suit, along with several other related patents, are descended from, and share a common specification with U.S. Pat. No. 5,941,972 ("the '972 patent") issued in August 1999.  The patents-in-suit claim structures and methods for providing access between computers and remote storage devices.  To a large extent, the technology involved is relatively simple.  At

---

[1] The '035 patent is asserted against Rorke, while the '147 patent is asserted only against 3PAR. The two patents share a common specification.  For convenience of reference, **all** specification citations in this brief are to the '035 patent, unless otherwise noted.

most, the patents claim a combination of pre-existing, known features:[2]

- providing virtual local storage on remote storage devices;
- allowing access to the storage devices using native low level, block protocols;
- mapping between host computers and the storage devices;
- using the map to control access from the host computers to the storage devices.

In 2000, Crossroads asserted the parent patent in two lawsuits in this Court, resulting in a joint claim construction order.[3] However, in 2004, the '035 patent was the subject of two *ex parte* reexamination proceedings[4], which were merged in March 2005. Thus, this Court's prior claim constructions pre-date critical, limiting arguments Crossroads made to the Patent Office in reexamination. During this same time period, the '147 patent was in prosecution. In an effort to preserve the '035 patent and secure the '147, Crossroads took several positions in both the '035 reexamination and the '147 prosecution that shed considerable new light on the meaning of the asserted claims and preclude many of the constructions Crossroads now asserts. In his Recommendation, the Special Master failed to take these developments and the related evidence into account.

For this reason, attempts by Crossroads to characterize some of its proposed constructions as "historic" and thus as something the Court need not revisit here, should be rejected. First, most of the so-called "historic" constructions were the product not of this Court's or the Special Master's considered analysis, but were stipulations by *other* parties, in *other* cases, involving a *different* mix of patents and asserted claims. More importantly, those stipulations

---

[2] *See, e.g.,* Exh. 1, 4/06/2005 Reply to Office Action Under *Ex Parte* Reexamination Dated 5/24/2005 (cited herein as 4/06/05 Reply) at 7-8, 18, 20-22, 25; and Exh. 2, 7/22/2005 Reply to Office Action Under Ex *Parte* Reexamination Date 2/07/2005 (cited herein as 7/22/05 Reply) at 7, 40.

[3] On July 26, 2000, this Court issued a joint claim construction order in *Crossroads Systems (Texas) Inc. v. Chaparral Network Storage Inc.,* Case No. 1:00-CV-00217-SS, and *Crossroads Systems (Texas) Inc. v. Pathlight Technology Inc.,* Case No. 1:00-CV-00248-SS. *See* Exh. 3.

[4] Control No. 90/007,125 (filed July 19, 2004) and Control No. 90/007,317 (filed Nov. 23, 2004).

were made before Crossroads took limiting positions in the '035 reexamination and '147 prosecution.  Rorke respectfully submits that such prior stipulations (whether or not adopted at the time by the Court) have neither precedential authority nor persuasive weight in the present action, on the present patents, in view of the full record now available.

Second, while three of Crossroads' current proposed constructions were substantively addressed and construed by the Court in prior litigation[5], Rorke here raised new issues that were not addressed in the prior constructions.  Moreover, the Court's constructions in *Chaparral* and *Dot Hill* were made either without knowledge of or without reference to Crossroads' more recent positions before the Patent Office.

### III.   LEVEL OF SKILL OF PERSON OF ORDINARY SKILL IN THE ART

One of ordinary skill in the art in the context of the '035 and '147 patents would have at least a bachelor's or master's degree in electrical or computer engineering, computer science or the equivalent, and at least five years experience in computer data storage and storage networks.

### IV.   LEGAL STANDARD FOR CLAIM CONSTRUCTION

The construction of claims is a matter of law for the Court.  In construing patent claims, the Court should consider first the intrinsic evidence, which includes the claims, the specification, and the file history.  *Vitronics Corp. v. Conceptronic Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (explaining that the intrinsic record is "the most significant source of the legally operative meaning of disputed claim language"); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).  Although the analysis begins with the words of the claims,

> The claims, of course, do not stand alone.  Rather, they are part of 'a fully integrated written instrument' consisting primarily of a specification that concludes with the claims.  For that reason, claims 'must be read in view of the specification, of which they are a

---

[5] These three terms are "implementing access controls" (construed by the Court in *Chaparral*), "map" (same) and "remote" (construed by the Court in *Crossroads v. Dot Hill*).

3

part.'  As we stated in *Vitronics*, the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal citations omitted).  When the specification or file history clearly indicates that a claim term is used more narrowly than its ordinary meaning, the narrow meaning given by the intrinsic record prevails.  *See, e.g., SciMed Life Sys. v. Advanced Cardiovascular Sys.,* 242 F.3d 1337, 1341 (Fed. Cir. 2001); *Microsoft Corp. v. Multi-Tech Sys.,* 357 F.3d 1340, 1348 (Fed. Cir. 2004); *Honeywell Int'l v. ITT Indus.,* 452 F.3d 1312, 1318 (Fed. Cir. 2006).[6]

## V.     RORKE'S OBJECTION TO TWO PROPOSED TERM CONSTRUCTIONS

### A.     Objection To The Special Master's Construction Of "Access Controls"

The Special Master's recommended construction for "access controls" is "controls which limit a device's access to a specific subset of storage devices or sections of a single storage device according to a map."  This construction is problematic in at least two respects.  The Special Master's recommended construction repeats the vague term "access" without defining it.  However, as explained at length in reexamination, controlling access means ensuring that each computer can read data from or write data to *only* the particular storage assigned to it.[7]  *See, e.g.,* 7/22/05 Reply at 13 ("By assigning storage devices or portions thereof to particular computer workstations, the present invention prevents each computer workstations [sic] from overwriting

---

[6] In *SciMed*, the Federal Circuit held that, when the specification:
> makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, *even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question*.

242 F.3d at 1341 (emphasis added).  Thus, in *Microsoft*, the Federal Circuit limited "transmitting" to communication over a telephone line, because the specification clearly stated that the invention communicates "over a standard telephone line."  357 F.3d at 1348.

[7] This aspect of "access" was recognized by Crossroads in its proposed construction of "allow[ing] access" as to "permit or enable communication to read or write data."  It follows that "access controls" would be the use of the map to permit or deny the reading and writing and of data.  Nonetheless, as discussed below, Crossroads' isolated construction of "allow[ing] access" is incorrect for other reasons.

4

or modifying data in storage assigned to another workstation").

Plainly, the Special Master ignored several important pieces of intrinsic evidence while arriving at his proposed construction. For instance, the Special Master ignored the following intrinsic evidence on point: 1) '035 Patent, 4:29-32 (Def. RPHB at p. 4); and 2) '035 patent 4:58-59 (*id*.). Specifically, specification of the '035 patent at 4:29-32 clearly states that "access control" is to control access to storage partition which forms virtual local storage.

> Storage router 56 combines *access control* with routing such that each workstation 58 has *controlled access* to only *the specified partition* of storage device 62 which forms virtual local storage for the workstation 58. ['035 Patent at 4:29-32]

In other words, "access control" means at least "a control to allow a workstation to access a storage space assigned to the workstation" – (A).

In addition, the specification of the '035 patent at 4:58-59 points out that another important requirement of "access control" is that the virtual local storage of a second workstation (another workstation) is not allowed to be accessed by a first workstation (a workstation 58).

> Further, no access from a workstation 58 is allowed to the virtual local storage of another workstation. ['035 Patent at 4:58-59]

This requirement means two things: "access control" is "a control not to allow a workstation to access a storage space not assigned to the workstation" – (B); and "a particular virtual local storage can only be accessed by a particular workstation" – (C). The above-referenced definitions are used to explain the embodiment in Fig.3 of the '035 Patent. Therefore the three requirements (A), (B) and (C) above are all necessary for the proper construction of "access control." Further, from the requirement (C) above ("a particular virtual local storage can only be accessed by a particular workstation"), we know that "access control" is a one-to-one correspondence, and no "global storage" or "shared storage" is allowed.

Next, the Special Master overlooked the fact that Crossroads only argued two things: (1) Defendants cannot use a unilateral Examiner's statement to limit "access controls" to a one-to-one relationship between devices and allocated storage, and (2) the specification of the '035 patent at Col.4, ll.17-27 does not state or suggest that any particular subset of storage cannot be accessed by multiple hosts. However, Crossroads failed to rebut Defendants' argument that the file history shows "access controls" does not cover global or shared storage [Def. PHB at 22-23], or that the specification clearly states that "access controls" does not cover global storage or shared storage. [Def. PHB at 23-24.] In this respect Crossroads' silence speaks volumes as it effectively admitted that the intrinsic evidence proves "access controls" does not cover global or shared storage. Moreover, contrary to Crossroads suggestion, Defendants did not depend in their arguments on the examiner's statement to support the Defendants' position, but also cited substantial intrinsic evidence to support the position.

Crossroads' other arguments lack merit as well. For instance, the specification of the '035 patent at Col.4, ll.17-27 supports Defendants' position by pointing out that each of the subsets 66, 68, 70 and 72 is the local storage of its associated workstation 58 and can only be accessed by the its associated workstation 58. '035 patent, Col.4, ll.22-25.

> These subsets 66, 68, 70 and 72 can only be accessed by the associated workstation 58 and appear to the associated workstation 58 as local storage accessed using native low level, block protocols. ['035 Patent at 4:22-25]

Furthermore, although the '035 patent, Col.4, ll.17-27 states that storage device 60 can be configured to provide global data 65 which can be accessed by all workstations 58 [['035 Patent at 4:17-19]], it does not state, or even suggest, that global data 65 area is a virtual local storage. Therefore, there is nothing in Crossroads citation to Col.4, ll.17-27 which is contrary to Rorke's position. Moreover, global access was admittedly in the prior art and therefore could not be part

6

of access controls. [Def. PHB P23, cited '035 patent 3:30-32, 56-59.]  Furthermore, it is clear that global data 65 area is not qualified as a virtual local storage.  In conclusion, "access control" is a one-to-one correspondence and no "global storage" or "shared storage" is allowed.

Finally, the Special Master's proposed construction refers unspecifically to "limiting" access and ignores the complementary function of permitting access.  As indicated in the excerpts cited above, the meaning of "access controls" is not that a host computer's ability to read and write data is amorphously "limited", but that that it is *permitted* for particular, assigned storage location and denied for others.

Thus, in view of the intrinsic record, the proper construction of "access controls" is:

*Controls that use a map to permit a particular device to read data from or write data to a particular storage space assigned to the device, and to prevent the device from reading data from or writing data to storage space assigned to other devices.*

### B.   Objection To The Special Master's Construction Of "Device"

Rorke also objects to the Special Master's recommended construction of "device."  The Special Master recommended that the claim term "device" requires no construction.  However, this approach overlooks critical intrinsic evidence of record.

First, the specification itself refers to a "device" as a computer, *e.g.,* a computer workstation, in no less than seven places:  1:37-39; 1:47-49; 1:57-60; 4:29-33; 4:39-40; 4:58-59; Fig. 2; and Fig. 3.  Plainly, Plaintiff contemplated "device" to mean a computer by disclosure of only one category of host equipment, *i.e.*, computers.

Second, in its Re-examination reply, Crossroads narrowed the scope of "device" to computers.  The Re-examination reply is replete with this definition.  In describing the invention to the Patent Office, Plaintiff explained that the "present invention" related to "host computers" that "access the remote storage devices over the network."  Second Reexam Reply at 8; *see also, id*. at 15.  Indeed, Plaintiff plainly explains, "[t]he present invention as recited in Claim 1 thus

7

enables *computers* to access remote storage devices." *Id*. at 16 (emphasis added).  Clearly, Plaintiff means that "device" is a computer.   In light of the above, the "device" should be construed as a "computer."

## VI.     CONCLUSION

For all the foregoing reasons, Rorke respectfully objects to the Special Master's recommended constructions of the terms "access controls" and "device" because the Special Master's recommendations ignore critical cited intrinsic evidence concerning the meaning of those two terms.  As a result, Rorke requests that the Court instead adopt Rorke's proposed construction of the two subject terms.

DATED:  September 19, 2011

Lisa H. Meyerhoff (TX Bar No. 14000255)
Email:  Lisa.Meyerhoff@bakermckenzie.com
Myall S. Hawkins (TX Bar No. 09250320)
Email:  Myall.Hawkins@bakermckenzie.com
BAKER & McKENZIE LLP
Pennzoil Place, South Tower
711 Louisiana, Suite 3400
Houston, TX  77002-2746
Tel: (713) 427 5000

Respectfully submitted,

/s/ John D. van Loben Sels
John D. van Loben Sels (Pro Hac Vice)
(CA Bar No. 201354)
Email: jvanlobensels@whgclaw.com
Franklin E. Gibbs (Pro Hac Vice)
(CA Bar No. 189015)
Email: FranklinGibbs@WHGCLaw.com
WANG, HARTMANN, GIBBS & CAULEY, PC
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel: (949) 833-8483

Patton C. Lochridge (Texas Bar No. 12458500)
Email: plochridge@mcginnislaw.com
Travis C. Barton (Texas Bar No. 7902276)
Email: tcbarton@mcginnislaw.com
MCGINNIS, LOCHRIDGE & KILGORE, LLP
1300 Capitol Center
919 Congress Avenue
Austin, TX 78701
Tel: (512) 495-6000

*Attorneys for Defendant Rorke Data, Inc.*

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's CM/ECF system on the 19th day of September, 2011.

                                               /s/ John D. van Loben Sels
                                               John D. van Loben Sels